UNITED STATES DISTRICT COURT
For the
District of Massachusetts

| | |
|---|---|
| IVAN LIPTON AND REBECCA LIPTON as guardians for EVA LIPTON<br><br>  Plaintiffs<br><br>vs.<br><br>KATE WALSH,<br>Secretary of the Executive Office<br>of Health and Human Services;<br>JANE RYDER,<br>Commissioner of the Department of<br>Developmental Services; and<br>MICHAEL CANCILLIERE,<br>President and CEO of<br>Cooperative Production<br>  Defendants | Case No. 1:22-CV-40137<br><br>Jury Trial: (check one)  ☐ Yes  √ No<br><br>**VERIFIED FIRST AMENDED COMPLAINT** |

    Eva Lipton, a resident of Massachusetts, by and through her parents and guardians, Ivan Lipton and Rebecca Lipton, brings this action to enjoin the Department of Developmental Services ("DDS") and Cooperative Production ("COOP") from discontinuing her group home support services on the basis of her domicile status. Eva has a serious traumatic brain injury which substantially impairs her ability to function and requires ongoing rehabilitation and support.  Since November 29, 2018, Eva had been a resident in a DDS contracted group home located in Wareham, Massachusetts which is run by COOP.  On August 20, 2022, the Plaintiffs received a 45-day notice to discontinue service for Eva dated August 17, 2022.  On September 7, 2022, Lisa Saba, DDS Regional Area Director, held a meeting regarding modifying Eva's Individual Service Plan ("ISP").  The proposed change in living supports were listed as nursing

home placement or a self-directed care model of supports. The guardians appealed the transfer pursuant to 115 CMR 6.63(2) and the modification pursuant to CMR 115 6.33 on September 29, 2022.  Eva was admitted to Tobey Hospital on October 18, 2022 for treatment of a urinary tract infection which caused her to have a seizure.  On October 21, 2022, Michael Cancilliere, President and CEO of COOP wrote the Tobey Hospital Medical team informing them that COOP is unable to have Eva Lipton return to their care within their residential programs "due to her extensive level of medical need."  There have been no changes in Eva's plan of care.  Eva remains in the hospital with no DDS supportive services.  Her parents are assisting with her care 24/7.  The hospital has been unable to find a nursing home placement for her.  An informal conference was held on November 28, 2022, two months after the notice of appeal was filed. DDS has not requested an adjudicative proceeding with the Division of administrative Appeals pursuant to 6.63(4)d and M.G.L. c. 7, § 4H.  During the informal conference, DDS stated that nursing home placement was not appropriate and proposed the Wrentham Development Center, which is one of two intermediate care facilities for individuals with intellectual disabilities. Wrentham Development Center is a very run down, outdated institutional.  The resident populations at Wrentham Development Center are declining because the State ultimately wants to close these facilities.  The buildings are in serious decline.  Ninety-Four percent (94%) of the resident in Wrentham Developmental Center are over 55 years old.  Eva is eight years younger than the youngest resident.  The guardians declined the placement after a tour and appealed the informal conference decision on December 16, 2022. No fair hearing has been scheduled.  After the informal conference, the guardians requested that DDS facilitate the self-directed program that they stated was more appropriate for Eva than a community group home.  Eva was assessed by Community Case Management and found to be ineligible for nursing services.  DDS

acknowledged that the self-directed program is not feasible as an immediate residential placement and will require a lot of inquiry, assessment and planning to find a suitable residence, to determine all the funding sources, to ascertain if the funding is sufficient to provide for two caregivers 24 hours 7 days a week plus nursing and therapy services, and to then hire and train caregivers, manage the budget and supervise caregivers.  It is unknown if someone with Eva's care needs can be provided for in the self-directed program.

## THE PARTIES

1. Plaintiff, Ivan Lipton, resides at 60 Thorne Road, Buzzards Bay, MA 02532.

2. Plaintiff, Rebecca Lipton, resides at 30 Prospect Road, Plympton, MA 02367.

3. The Defendant, Massachusetts Executive Office of Health and Human Services ("EOHHS" or "the Agency"), is the agency charged under federal and state law with responsibility for administering the Massachusetts Medicaid Program ("MassHealth").  The agency is located at One Ashburton Place, Boston, Massachusetts.

4. The Defendant, Massachusetts Department of Developmental Services ("DDS"), is the agency within EOHHS charged under state law with the responsibility for the administration of state and federal programs and services for individuals with mental retardation.  The agency is located at 500 Harrison Avenue, Boston, Massachusetts.

5. The Defendant, Kate Walsh, is the Secretary of the EOHHS.  She is responsible for the administration of the MassHealth program and DDS. Her office is located at One Ashburton Place, Boston, Suffolk County, Massachusetts.

6. The Defendant, Jane Ryder, is the Commissioner of DDS. She is responsible for the administration and actions of DDS. Her office is located at 1000 Washington Street, Boston, Suffolk County, Massachusetts.

7. The Defendant, Michael Cancilliere, is the CEO and president of COOP which manages the group home where Eva resided. The group home is contracted to provide residential services with DDS and receives funding from the MassHealth Community Home Based Waiver Program.

   COOP is located at 455 Somerset Avenue, N. Dighton, Massachusetts.

8. Ms. Walsh, Ms. Ryder and Mr. Cancilliere are sued in their official capacities.

## JURISDICTION

9. Medicaid is a joint federal-state cost-sharing program designed to enable each state to furnish comprehensive medical assistance to public assistance recipients and other needy citizens whose income is insufficient to meet the cost of necessary medical care. 42 U.S.C. §1396 *et seq.*

10. A state's participation in the Medicaid program is voluntary. If it chooses to participate, it must adopt a state plan which is consonant with the requirements of the Medicaid Act. 42 U.S.C. §1396 (a)(1) *et seq.* That includes establishing or designating a single state agency to be responsible for the administration of the plan.

11. Massachusetts has chosen to participate in the Medicaid program. EOHHS is the single state agency designated by the Commonwealth to administer its Medicaid program. The Massachusetts Medicaid program is required to comply with the federal statutory and regulatory scheme.

12. Massachusetts receives federal funds pursuant to a Medicaid plan which is

administered by DDS to provide services for intellectually disabled individuals requiring services in intermediate care facilities. Massachusetts also has a Medicaid waiver plan that is administered by DDS to provide home- and community-based services to individuals who, but for the provision of such services, would require intermediate care services. Home- and community-based services (other than room and board) are included as Medicaid for which Massachusetts receives federal funds. 42 U.S.C. 1396a(c)(1).

13. The DDS Intensive Supports Medicaid waiver plan provides services to individuals who meet the eligibility criteria and require supervision and support 24 hours a day, seven days a week due to significant behavioral, medical and/or physical support needs with traumatic brain injury (TBI) and other intellectual disabilities, such as Eva.

14. In 1999, the U.S. Supreme Court rendered a decision in *Olmstead v. L.C.*, 577 U.S. 581 (1999), indicating that states have a legal obligation to administer programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. This decision recognized that state may satisfy this obligation through development of a comprehensive, effective working plan for placing qualified persons with disabilities like Eva in less restrictive settings.

15. The Commonwealth's current Olmstead Plan was finalized in 2018. It sets forth a plan to facilitate opportunities for all people with disabilities to live their lives fully included and integrated into their chosen community both by increasing the movement of such persons from institutional to community settings and by preventing unnecessary institutionalization or homelessness of such persons.

16. In 1987 Congress amended Medicaid by enacting the NHRA. It had found that many states were reducing crowding in state institutions by transferring mentally disabled people to geriatric facilities, which were poorly equipped to care for them. H.R. Rep. No.100-391 (1), at 459 (1987) as reprinted in 1987 U.S. U.S.C.C.A.N. 2313-1, 2313-279. The NHRA limits states to using Medicaid funding for nursing home residents found, through a screening process, to need the level of care nursing homes provide. See 42 U.S.C §1396r (e)(7)(D)(ii). The screening process is called the Preadmission Screening and Annual Resident Review (PASARR) and it requires states to assess whether intellectually disabled individuals need nursing home level of care and require specialized services.

17. In Roland v Celucci,191 F.R.D. (D.Mass.2000), a class of disabled adults brought suit under 42 U.S.C.§1983 and Title II of the ADA, and claimed that Massachusetts was violating the ADA, several Medicaid provisions and the NHRA by illegally limiting the access to community programs and ignoring PASARR findings. The state was alleged to have confined many persons to nursing homes who belonged in community placements and not providing them with specialized series while in nursing homes. In 2000, the court approved a settlement between the parties in which the state agreed to place many class members in appropriate placements, divert people who would have been admitted into nursing homes to community placements, and provide members with specialized placements.

18. Eva's residential placement at COOP was partially funded with "Roland funds." **Exhibit A**.

19. This action is also brought pursuant to Title II of the ADA, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Title II of the ADA prohibits public entities from excluding disabled individuals from entities' "services, programs, or activities." 42 U.S.C. §12132. This integration mandate requires states to place people in the most integrated setting appropriate, 28

C.F.R.§35.130(d). This Court has jurisdiction over the claims under the ADA and Section 504 pursuant to 42 U.S.C. § 12133 and 29 U.S.C. § 794a.

20. Injunctive relief is authorized by 28 U.S.C. § 2202, 42 U.S.C. § 1983, and Rule 65 of the Federal Rules of Civil Procedure.

21. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b).

## FACTS

22. Eva was born on October 9, 1994 in Boston MA to her father, Ivan Lipton, and her mother, Rebecca Lipton.

23. Eva suffered Traumatic Brain Injury (TBI), Obstructive Hydrocephalus, and has a diagnosis of Developmental Delays NOS secondary to TBI, as result of an automobile accident in March 2012.

24. These are permanent conditions. Eva is unable to engage in the cognitive processes needed for decision-making and is severely physically disabled.

25. Ivan and Rebecca Lipton were appointed Co-Guardians of the person of Eva Bess Lipton on May 21, 2014 due to her incapacity.

26. After her accident, Eva was hospitalized from March 2012 to September 2012.

27. Eva was transferred to the Plymouth Rehabilitation and Health Care Center where she received therapy and nursing care from September 2012 until May 22, 2017.

28. In coordination with DDS, Eva moved to a Seven Hills Group Home located at 15 Bosun's Lane in Bourne, Massachusetts which was funded through the Medicaid Intensive Care Waiver and Roland Funds.

29. In coordination with DDS, Eva moved again to CO-Operative Productions group home located at 2298A Cranberry Highway in Wareham, MA on November 28, 2018.

30. COOP is a DDS contracted group home provider and receives funding from DDS and Medicaid.

31. COOP provides care to Eva based upon her Individual Service Plan (ISP) which was drafted in consultation with DDS and the Plaintiffs.  *See* **Exhibit B**.

32. On August 20, 2022, the Guardians received a 45-day notice to discontinue service for Eva dated August 17, 2022.  **Exhibit C**.

33. On September 7, 2022, Lisa Saba, DDS Regional Area Director, held a meeting regarding modifying Eva's Individual Service Plan.

34. The proposed change in living supports were nursing home placement or self-directed care model of supports. *See* **Exhibit D**.

35. The guardians though counsel appealed the transfer pursuant to 115 CMR 6.63 (2) and the modification pursuant to 115 CMR 6.33.on September 29, 2022.  **Exhibits E & F**.

36. 115 CMR 6.33 provides that an appeal must be filed 30 days after receipt of an ISP which is the subject of the appeal.  An informal conference is to be held within 30 days of notification of the appeal.  The purpose of the informal conference is to conciliate the issues being appealed and/or to clarify the issues for further appeal.

37. DDS held the informal conference on November 28, 2022, two months after the appeal was filed.

38. Pursuant to 115 CMR 6.34(4), "Unless the parties agree otherwise, those portions of the ISP which are the subject of appeal shall not be implemented until after the informal conference conducted pursuant to 115 CMR(1), unless earlier implementation is necessary to respond to a serious or immediate threat to the health or safety of the individual or others.

39. If the issues being appealed are not resolved at the informal conference, then the appealing party may petition the Commissioner, within 30 days requesting a fair hearing.

40. The fair hearing decision under 115 CMR 6.33(2) may be entitled to judicial review in accordance with M.G.L. c. 30A, § 14.  No fair hearing has been scheduled.

41. Pursuant to 6.63: transfers, additional requirements must be satisfied when a transfer decision is appealed.  All parties eligible to participate in an ISP modification must be given 45 written prior to the proposed transfer by registered mail.  The written notice must include how the proposed move will result in improved services and quality of life for the disable individual, specify a location for the proposed transfer, include an opportunity for the parties to visit and expect the residence, to invite the parties to discuss the pros and cons of the transfer with the service coordinator, and include a statement of rights established by 115 CMR 6.63.

42. The Plaintiffs never received a 45 written notice by DDS.

43. If any party of an ISP modification files an objection to the proposed transfer in accordance with 115 CMR 6.63(3) then the transfer *shall not occur* until the Department prevails at an adjudicatory proceeding held pursuant to CMR 6.63 (2).

44. Pursuant to 115 CMR 6.63(4), if the ISP, including any proposed transfer cannot be fully implemented as a result of an objection to a proposed transfer, DDS shall file a request for an adjudicatory hearing with the Division of Administrative Law Appeals within 20 days as set forth in M.G.L. c. 7 § 4H.

45. DDS has not requested an adjudicative proceeding with the Division of Administrative Appeals pursuant to 6.63(4)d and M.G.L. c. 7, § 4H.

46. Eva was admitted to Tobey Hospital on October 18, 2022 for treatment of a urinary tract infection.

47. On October 21, 2022, Michael Cancilliere, President and CEO of Cooperative Production wrote the Tobey Hospital Medical team informing them that Cooperative Production is unable to have Eva return to their care within their residential programs "due to her extensive level of medical need." **Exhibit G**.

48. There have been no changes in Eva's medical need.

49. Eva continues to remain in the hospital with no DDS direct supportive services. Eva's hospital bill through January 27, 2023 is $102,200.00 and growing by $42,000 every month.

50. Tobey Hospital is unable to provide the level of nursing care and other supports that Eva requires.

51. Eva's parents are assisting in her care 24/7. The hospital has been unable to find a nursing home placement for her.

52. Eva is at-risk for serious injury and decline. Eva has no control of her head and body and requires frequent repositioning so that she can breathe, to keep her comfortable and to reposition to prevent pressure sores. Eva has a G Tube which provides her

nutrition, requiring administration of various feedings throughout each 24-hour period, and Eva requires changing and cleaning to prevent UTI's which can result in seizures. Eva requires range-of-motion and stretching exercises to prevent her muscles from atrophy and contractures.

## **PRAYERS FOR RELIEF**

WHEREFORE, the Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this action;

2. Enjoin DDS from depriving Eva Lipton of group support services until a final decision is made regarding appeal and, for the duration of Eva's appeal, order DDS to provide group home support services on an emergency basis;

3. Enter declaratory judgment finding that DDS deprived Eva of her due process entitlement to a fair and impartial fair hearing on the issue of transfer and modification;

4. Enter declaratory judgment that Eva has met the regulatory requirements as a protected person under the Olmstead Act and Title II and Section 504 of the ADA;

5. Issue a writ of mandamus requiring DDS to conduct a fair hearing and to apply the proper legal standards for transfer and modification in reaching a final administrative decision;

6. Declare the parties' rights under 115 CMR 6.33; 115 CMR 6.63(2); Olmstead and Title II and section 504 of the ADA;

7. Grant the Plaintiffs the cost of this action, including attorney's fees from the date of the appeal though the conclusion of this action pursuant to 42 U.S.C 1988; and

8. Grant the Plaintiffs the cost of Eva's hospital bills;

9. Grant such other and further relief as this Court may deem just and equitable.

                    IVAN AND REBECCA LIPTON,
as guardian for Eva Lipton,
By their attorneys,


*/s/  Patrick C. Tinsley*

_____

**Patrick C. Tinsley, Esquire, BBO # 663648**
**FLETCHER TILTON PC**
161 Worcester Road, Suite 520
Framingham, MA 01701
*Direct Line:  508-459-8211*
*Direct Fax:  508-459-8411*
*Email:  [ptinsley@fletchertilton.com](mailto:ptinsley@fletchertilton.com)*

*/s/  Anne E. Grenier*

_____

**Anne E. Grenier, Esquire, BBO # 679774**
**FLETCHER TILTON PC**
370 Main St. – 11th Floor
Worcester, MA 01608
*Direct Line:  508-459-8069*
*Direct Fax:  508-459-8369*
*Email:  [agrenier@fletchertilton.com](mailto:agrenier@fletchertilton.com)*

Dated:  February 14, 2023

## Verification

We, Ivan Lipton and Rebecca Lipton, hereby certify that we have reviewed the allegations contained in the Verified Complaint and that all of the allegations contained herein are based upon our own knowledge, and that we know such allegations to be true.

Signed under the pains and penalties of perjury this 9th day of February 2023.

_____
Ivan Lipton

_____
Rebecca Lipton